IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CHATTAHOOCHEE RIVERKEEPER, INC.,<br>    Plaintiff,<br>                          v.<br>CITY OF ATLANTA, GEORGIA,<br>    Defendant. | Civil Action No.<br>1:24-cv-03989-SDG |

**OPINION AND ORDER**

This matter is before the Court on Defendant City of Atlanta's motion to dismiss or, in the alternative, for a partial stay [ECF 15]. For the following reasons, the City's motion is **DENIED**.

**I.   BACKGROUND**

This case arises out of the City's alleged pollution of the Chattahoochee River through unlawful discharges from an inadequately maintained wastewater treatment plant.[1] Plaintiff Chattahoochee Riverkeeper, an environmental non-profit,[2] sued the City under the citizen-suit provision of the Clean Water Act,[3] for

---

[1]   ECF 19, ¶¶ 2–3. The amended complaint at ECF 19 is the operative complaint.

[2]   *Id.* ¶ 19.

[3]   The Act authorizes civil enforcement of its provisions by private citizens. 33 U.S.C. § 1365(a).

1

various violations of the City's discharge permit.[4] Riverkeeper asserts two counts against the City as follows:

> Count I: For violating seven of the permit's numerical standards by exceeding the effluent limits for
>
> 1. Carbonaceous Five-Day Biochemical Oxygen Demand (CBOD5);
>
> 2. Chemical Oxygen Demand (COD);[5]
>
> 3. Total Suspended Solids (TSS);[6]
>
> 4. Fecal Coliform;
>
> 5. *E. Coli*;[7]
>
> 6. Ammonia; and

---

[4] The relevant discharge permit is issued by the State of Georgia, ECF 19, ¶ 50, under the supervision of the U.S. Environmental Protection Agency (EPA), 33 U.S.C. § 1342. Permit violations are subject to strict liability. *Kelly v. E.P.A.*, 203 F.3d 519, 522 (7th Cir. 2000).

[5] CBOD5 and COD are alternative measures for the concentration of organic matter in wastewater. Brian H. Kiepper, *Understanding Laboratory Wastewater Tests: I. Organics (BOD, COD, TOC, O&G)*, UNIV. OF GA. EXTENSION (Aug. 18, 2022), https://extension.uga.edu/publications/detail.html?number=C992 [https://perma.cc/4GVU-QRVB].

[6] TSS measures the concentration of all "floatable, settleable, and suspended" particulate matter. Brian H. Kiepper, *Understanding Laboratory Wastewater Tests: II. Solids (TS, TSS, TDS, TVS, TFS)*, UNIV. OF GA. EXTENSION (Mar. 1, 2024), https://extension.uga.edu/publications/detail.html?number=C1276 [https://perma.cc/E59J-MGCG].

[7] *E. coli* is a species of fecal coliform bacteria; both fecal coliform in general and *E. coli* in particular are indicators of fecal contamination. Uttam K. Saha et al., *Coliform Bacteria in Your Water*, UNIV. OF GA. EXTENSION (Oct. 21, 2022), https://extension.uga.edu/publications/detail.html?number=C858-7&title=coliform-bacteria-in-your-water [https://perma.cc/KQU3-KPYT].

      7. Total Phosphorus;[8] and

Count II: For violating one of the permit's non-numerical (*i.e.*, "narrative") standards by failing to properly operate and maintain its wastewater treatment facility.[9]

Riverkeeper alleges that these violations have been ongoing[10] since as early as January 2023.[11] The City moves to dismiss both of Riverkeeper's claims.[12]

## II.   DISCUSSION

The City's motion to dismiss raises three arguments. First, the City asserts that Count I should be dismissed in part—as to CBOD5, COD, TSS, fecal coliform, and *E. coli*, which this Order will call the "non-nutrient pollutants"—because the City's current permit compliance as to those pollutants deprives the Court of subject matter jurisdiction.[13] Second, the City asserts that the rest of Count I should be stayed—as to ammonia and phosphorus, or the "nutrient pollutants"—because

---

[8]    ECF 19, at 16–30.

[9]    *Id.* at 31–34. The operative complaint only alleges that the City violated a single narrative standard. *Id.* Riverkeeper initially alleged violations of two other narrative standards, (1) imposing a "duty to mitigate" discharges adversely affecting the environment, ECF 1, ¶¶ 88–89; and (2) imposing a "duty to prevent injury to property and downstream users," *id.* ¶¶ 90–92. Because allegations as to those standards have now been withdrawn, the Court does not address them.

[10]   ECF 19, ¶¶ 73–74, 86.

[11]   *Id.* ¶ 65.

[12]   ECF 15.

[13]   ECF 15-1, at 13–16.

a soon-to-be-executed settlement agreement between the City and the Georgia Environmental Protection Division (EPD) will moot Count I in its entirety.[14] Third, the City asserts that Count II should be dismissed because it is wholly derivative of Count I.[15] Because the Court declines to dismiss or stay Count I as to any pollutant, the City's motion is denied.

### A. The Court Has Subject Matter Jurisdiction over Count I as to CBOD5, COD, TSS, Fecal Coliform, and *E. Coli*.

The City asserts that Count I should be dismissed for lack of subject matter jurisdiction as to the non-nutrient pollutants, with respect to which permit violations had ceased by the time Riverkeeper filed its complaint. Section 505 of the Clean Water Act grants jurisdiction over citizen-suits against any person "*in violation*" of a discharge permit. 33 U.S.C. § 1365(a)(1) (emphasis added). Section 505 was interpreted by the Supreme Court—in the seminal case *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*—as granting subject matter jurisdiction over citizen-suits only to the extent they allege a permit violation "in the present or the future, not in the past."[16] 484 U.S. 49, 57 (1987). Under *Gwaltney*,

---

[14]  *Id.* at 16–21. The City has filed a notice indicating that it and EPD have agreed to the terms of the settlement, which the City expects to be executed and entered by court order pending public comment. ECF 29, at 1–2.

[15]  *Id.* at 22–26.

[16]  Subject matter jurisdiction is a constitutional limit on a court's "power to declare the law." *Ex parte McCardle*, 74 U.S. 506, 514 (1868). In *Steel Co. v. Citizens for a Better Environment*—decided some years after *Gwaltney*—the

4

the City argues, there is no jurisdiction over Count I as to the non-nutrient pollutants because the City has remained in compliance with those pollutants' effluent limits—with the exception of a single, hurricane-induced violation of the weekly TSS—since before the instant complaint was filed.[17] To prove its ongoing compliance, the City has filed a sworn statement by a former plant manager at the wastewater treatment facility in question, Joey Porter, Jr.[18] The City posits that Riverkeeper must rebut Porter's declaration with more than "mere good-faith allegations" of ongoing violations to survive the instant motion to dismiss.[19]

The City's position is foreclosed by none other than *Gwaltney* itself, which expressly rejected the idea that "citizen-plaintiffs must *prove* their allegations of ongoing noncompliance before jurisdiction attaches under § 505." *Id.* at 64 (emphasis added). As *Gwaltney* explained, the text of the statute requires, not that the defendant be proven to be in violation, but that he be "*alleged* to be in violation" of his permit at the commencement of the suit. *Id.* Consistent with the universal

---

Supreme Court questioned whether the scope of a citizen-plaintiff's right to privately enforce environmental statutes is truly a matter of *constitutional* (as opposed to statutory) jurisdiction. 523 U.S. 83, 90–91 (1998). Nevertheless, *Citizens* assumed that *Gwaltney* was "authoritative on the point as to the distinctive statute there at issue." *Id.* at 91.

[17]  ECF 15-1, at 14.
[18]  ECF 15-2.
[19]  ECF 24, at 6.

principle that "allegations of injury are sufficient to invoke the jurisdiction of a court," *id.* at 65, *Gwaltney* held that § 505 confers jurisdiction over citizen-suits that "make a good-faith allegation of continuous or intermittent violation," *id.* at 64. Riverkeeper's complaint, which alleges "continuing" violations as to the non-nutrient pollutants,[20] is sufficient to confer standing under *Gwaltney*.

To be clear, *Gwaltney* does *not* preclude a defendant from disputing, as a factual matter, the existence of an ongoing permit violation. But, as *Gwaltney* explained, such a challenge is properly raised either at summary judgment, if the evidence shows that the plaintiff's allegations "were sham and raised no genuine issue of fact"; or at trial, "where the plaintiff must prove the allegations in order to prevail." *Id.* at 66. It makes sense, given the "practical difficulties of detecting and proving chronic episodic violations of environmental standards," that courts should wait to resolve factual disputes about the defendant's compliance until it is presented with a complete record. *Id.* at 65. The City's request to dismiss Count I as to the non-nutrient pollutants, on the pleadings, before the parties have engaged in any discovery,[21] is plainly premature.

---

[20]   ECF 19, ¶¶ 73–74.

[21]   Discovery is stayed pending resolution of the instant motion to dismiss pursuant to the Court's standing order. ECF 4, at 7–8.

The Court would reach the same conclusion even it accepted the City's invitation to ignore *Gwaltney* and analyze the jurisdictional issue as an attack on Riverkeeper's standing. The City argues that because its standing attack is *factual*, the Court is authorized to weigh evidence and resolve factual disputes based on the existing record, before any discovery has taken place.[22] The City is correct that, in evaluating factual standing attacks, a court has "substantial authority" to make factual findings without regard to the procedural posture. *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999). Thus, even on a motion to dismiss, the Court is free to look beyond the pleadings, consider "testimony and affidavits," and "evaluat[e] for itself" the factual basis of its jurisdiction." *Id.*

However, a court's undisputed power to "satisfy itself as to the existence of its power to hear the case," *id.*, does not give it unlimited factfinding discretion. As explained by the former Fifth Circuit[23] in *Williamson v. Tucker*, a plaintiff whose standing is attacked on factual grounds is still entitled to due process: The court must still give him "an opportunity to develop and argue the facts in a manner

---

[22] ECF 24, at 3. By contrast, in a *facial* attack on standing, courts ask whether the allegations in the complaint, assumed to be true and construed in the plaintiff's favor, support a reasonable inference that subject matter jurisdiction exists. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260–61 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012).

[23] Fifth Circuit cases decided before October 1, 1981, are binding precedent in the Eleventh. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

that is adequate in the context of the disputed issues and evidence." 645 F.2d 404, 414 (5th Cir. 1981). That means, at a minimum, "a chance to discover the facts necessary to establish jurisdiction." *Id.* Where "the facts are complicated and testimony would be helpful," an evidentiary hearing may be required. *Id.*

The Eleventh Circuit has repeatedly held that these procedural protections are particularly important where "the jurisdictional basis of a claim is intertwined with an element of the cause of action." *Lawrence v. Dunbar*, 919 F.2d 1525, 1530 (11th Cir. 1990). In *Lawrence*, for example, the plaintiff needed to prove that the defendant was acting "within the course and scope of his employment" for two reasons: both to establish subject matter jurisdiction *and* to prevail on the merits of her tort claim, *id.* at 1529. The lower court dismissed the case for lack of standing because it had found, relying "almost exclusively" on a sworn statement provided by the defendant's supervisor, *id.* at 1527, that the defendant was not acting within the course and scope of his employment when the accident occurred. *Id.* The Eleventh Circuit vacated the dismissal, holding that "federal claims should not be dismissed on motion for lack of subject matter jurisdiction when that determination is intermeshed with the merits of the claim and when there is a dispute as to a material fact." *Id.* at 1531; *accord Williamson*, 645 F.2d at 415 (reversing dismissal for lack of subject matter jurisdiction where the existence of a

security interest bore both on the existence of jurisdiction and on the merits of the plaintiff's securities law claim).

*Williamson* and *Lawrence* are directly applicable here, where the City asks the Court to resolve factual disputes about the circumstances of the City's permit violations, before the parties have engaged in discovery, based on little more than a single affidavit.[24] Here, too, there is an intertwining of the factual predicate to the Court's subject matter jurisdiction and the factual prerequisite to Riverkeeper's success on the merits, namely, the nature and extent of the City's permit violations over time, including during the fall of 2024 when the instant complaint was filed. In such a case, "[t]he proper course of action for the district court is to find that jurisdiction exists and deal with the [standing] objection as a direct attack on the merits of the plaintiff's case." *Williamson*, 645 F.2d at 415. That, in turn, requires that Riverkeeper be afforded both discovery and a hearing, as well as the protections of Federal Rules of Civil Procedure 12(b)(6)[25] and 56[26] on disputed

---

[24] ECF 24, at 7 (citing Porter's declaration for the factual proposition that the City "achieved [compliance] before the Complaint was filed").

[25] On a motion to dismiss under Rule 12(b)(6), the Court "must take the plaintiff's allegations as true." *Williamson*, 645 F.2d at 415–16.

[26] On a motion under Rule 56, the Court cannot grant summary judgment unless there is "no genuine issue of material fact." *Id.* at 416.

issues of fact. *Id.* at 414. The City's attempt to circumvent these protections through a "factual attack on standing" is rejected.

### B. Count I Is Not Mooted by the City's Post-Complaint Compliance.

The City asserts that Count I should be stayed while the City executes a consent decree with EPD to settle a pending administrative enforcement action for the same violations at issue here. The City argues that settlement of the EPD action will doubly preclude Riverkeeper's citizen-suit as to all seven pollutants in Count I:[27] constitutionally, under the involuntary mootness doctrine;[28] and statutorily, under the diligent prosecution bar.[29] These arguments are addressed in turn.

#### 1. Involuntary Mootness

The Court begins with mootness, another jurisdictional issue.[30] *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 408 (11th Cir. 1999) (instructing courts to resolve jurisdiction before deciding the legal merits). A case is moot when "events subsequent to the commencement of a lawsuit create a situation in which the court

---

[27] Technically, the City requests that the Court stay Count I only as to the nutrient pollutants, presumably on the assumption that Count I as to the non-nutrient pollutants is subject to dismissal on standing grounds. ECF 24, at 6. Having rejected the City's standing argument, the Court treats the City's request for a stay as applying to both nutrient and non-nutrient pollutants.

[28] ECF 15-1, at 17–20.

[29] *Id.* at 21.

[30] While mootness is jurisdictional, *Sierra Club v. E.P.A.*, 315 F.3d 1295, 1299 (11th Cir. 2002), the diligent prosecution bar is not, *S. River Watershed All., Inc. v. Dekalb Cnty.*, 69 F.4th 809, 823 (11th Cir. 2023).

10

can no longer give the plaintiff meaningful relief." *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1217 (11th Cir. 2000). When that happens—when the issues presented are "no longer 'live'"—the case is moot and must be dismissed. *Id.* at 1217–18. Here, the City argues that Count I will be moot and subject to dismissal, with respect to Riverkeeper's prayers for both injunctive relief and civil damages, once the City achieves compliance with its permit under the forthcoming consent decree.[31] The Court does not agree.

The dispositive mootness analysis is the one in *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000).[32] In *Laidlaw*, the Supreme Court declined to rule a citizen-suit moot as a matter of law even though the defendant had not only remained in "substantial compliance" with its Clean Water Act permit for years after the complaint was filed, but had also shut down its polluting facility while the appeal was pending. *Id.* at 189. *Laidlaw* reaffirmed the "well settled" rule that a defendant's "voluntary cessation of a challenged practice" does not automatically moot a case, lest the defendant be left "free to return to his old ways." *Id.* Rather, a defendant's post-complaint compliance can

---

[31] ECF 24, at 8.

[32] Remarkably, neither party's briefing cited to *Laidlaw*, a Supreme Court case that appears to be directly on point on the mootness issue.

moot a case—with respect to both injunctive relief and civil penalties[33]—only "if subsequent events ma[k]e it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (emphasis added). The "heavy burden" of meeting this "stringent" standard lies with the party asserting mootness—here, the City. *Id.*

Furthermore, *Laidlaw* does not seem to have disturbed existing Eleventh Circuit precedent on the mootness of Clean Water Act claims *for civil penalties*. Under the rule set forth in *Atlantic States Legal Foundation, Inc. v. Tyson Foods, Inc.*, corrective actions taken by the defendant after the complaint is filed *cannot* moot a claim for civil penalties as a matter of law.[34] 897 F.2d 1128, 1134–36 (11th Cir. 1990). As *Tyson Foods* explained, liability for civil penalties under the Act is "fixed" in the past because "civil penalties attach as of the date a permit violation occurs." *Id.* at 1135. Thus, a citizen-plaintiff may maintain an action for civil penalties, *regardless* of the defendant's post-complaint compliance, based on "good faith

---

[33] Though the mootness issue in *Laidlaw* arose in the context of a claim for civil penalties, *Laidlaw*'s discussion cited exclusively to cases "involv[ing] requests for injunctive or declaratory relief." 528 U.S. at 197 (Stevens, J., concurring).

[34] *Tyson Foods* was cited approvingly by *Laidlaw* for this very proposition: "[A] defendant's compliance with its permit after the commencement of litigation does not moot claims for civil penalties." 528 U.S. at 180; *see also id.* at 196 (Stevens, J., concurring) (harmonizing *Laidlaw* with the broadly accepted rule that "a polluter's voluntary postcomplaint cessation of an alleged violation will not moot a citizen-suit claim for civil penalties even if it is sufficient to moot a related claim for injunctive or declaratory relief").

12

allegations" that violations were ongoing at the time the complaint was filed[35]—allegations that, as already discussed, are present here. *Id.*

The City nevertheless asserts that Count I is subject to dismissal under the *involuntary* mootness doctrine, which purportedly governs the mootness of Clean Water Act claims where the defendant's post-complaint compliance occurs "in response to regulatory oversight."[36] In support of this position, the City cites repeatedly and exclusively to *Black Warrior Riverkeeper, Inc. v. Cherokee Mining, LLC*, a Clean Water Act citizen-suit from the Northern District of Alabama. 637 F. Supp. 2d 983, 991 (N.D. Ala. 2009). In *Cherokee Mining*, the defendant settled an administrative enforcement action brought by the state environmental agency by agreeing in a consent order to pay fines and "take several steps to prevent future violations." *Id.* at 986. *Cherokee Mining* reasoned—in express derogation of *Laidlaw*, *Tyson Foods*, and *Gwaltney*—that the defendant's actions, occurring "in direct response to an order entered by the state agency officially charged with the responsibility for dealing with water violations," were "not voluntary." *Id.* at 987. As a result, the district court held, the case was moot as to injunctive relief *and civil*

---

[35] Of course, a plaintiff "must be able to *prove* that non-compliance was ongoing at the time they filed suit" to prevail on summary judgment or at trial. *Tyson Foods*, 897 F.3d at 1135.

[36] ECF 24, at 8.

*penalties* for the plaintiff's failure to show "a serious prospect that the [permit] violations described in its complaint will continue to occur." *Id.* at 989.

This Court declines to follow *Cherokee Mining*'s teachings on "involuntary mootness" for three reasons. First and most fundamentally, the dispositive distinction that it endeavored to draw between "voluntary" and "involuntary" conduct is foreclosed by *Laidlaw*. For purposes of mootness, *Cherokee Mining* and *Laidlaw* are factually identical. In both cases, the defendant settled an administrative enforcement action, brought by the state environmental agency, related to the permit violations alleged in the citizen-plaintiff's complaint, via a consent decree, by paying a fine and promising to comply with its permit going forward. *Compare Cherokee Mining*, 637 F. Supp. 2d at 986, *with Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 890 F. Supp. 470, 478–80 (D.S.C. 1995).[37] *Laidlaw* nevertheless explicitly characterized its defendant's post-complaint compliance—that is to say, the defendant's corrective action taken in direct response to agency enforcement—as "voluntary conduct." *Id.* at 189; *cf. Loc. No. 93,*

---

[37] In fact, the defendant in *Laidlaw* had a much stronger factual basis for mootness than did the defendant in *Cherokee Mining* (or does the City here): It settled the state action before the citizen-suit was filed, 528 U.S. at 177; had not committed a permit violation in over five years by the time the Supreme Court decision was issued, *id.* at 178; and had "permanently ceased" discharges from its polluting facility while the appeal was pending by closing it, dismantling it, and putting it up for sale, *id.* at 179.

14

*Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 522 (1986) ("[T]he voluntary nature of a consent decree is its most fundamental characteristic."). Here too, in other words, any corrective action that the City may undertake in response to EPD enforcement would be "voluntary" for purposes of analyzing mootness.

Second, the mootness standard applied in *Cherokee Mining* is almost exactly the opposite of the one that the Supreme Court and the Eleventh Circuit have been applying in Clean Water Act cases for decades. *Cherokee Mining* held that claims were moot unless the *plaintiff* could prove a "*serious prospect*" of future violations. 637 F. Supp. 2d at 989 (emphasis added). This standard is irreconcilable with *Laidlaw*, under which it remains the *City*'s burden to prove it "*absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw*, 528 U.S. at 189; *accord Gwaltney*, 484 U.S. at 66; *Tyson Foods*, 897 F.2d at 1134. Furthermore, *Cherokee Mining*'s conflation of the mootness analysis for injunctive relief and civil penalties is inconsistent with *Tyson Foods*'s holding that post-complaint compliance cannot moot a claim for civil penalties. It is *Laidlaw* and *Tyson Foods* that the Court will apply in this case.

Third, *Cherokee Mining* seemingly resolved factual disputes on what was, by that court's own admission, an incomplete record.[38] 637 F. Supp. 2d at 889 (noting that there had been no discovery on "the probability of continuing violations by [the defendant]," and acknowledging that the court lacked the evidence necessary to make dispositive "credibility determinations"). The *Cherokee Mining* court seems also to have filled factual gaps by drawing inferences about the defendant's future conduct from an *amicus* brief submitted by the state enforcement agency. *Id.* at 989 (giving "deference" to the agency's representation that the defendant was compliant and would remain compliant going forward). That kind of judicial factfinding is foreclosed by *Williamson* and *Lawrence*—particularly because the City's future conduct is dispositive of both the mootness and the merits of Riverkeeper's claim for injunctive relief. *See Alabama v. Army Corps of Eng'rs*, 424 F.3d 1117, 1133 (11th Cir. 2005) (denying injunctive relief because the plaintiffs failed to satisfy the "irreparable harm" requirement by showing a threat of "future violations").

Putting it, finally, all together: Dismissal on mootness grounds is improper here both legally and procedurally. Legally, under *Tyson Foods*, Count I will not be

---

[38] There is no indication on the *Cherokee Mining* docket that the parties engaged in discovery or took part in an evidentiary hearing. *See* Civ. A. No. 2:07-cv-01392-WMA (N.D. Ala.).

16

moot as to civil damages regardless of the City's negotiations with EPD or future compliance with its permit; and, under *Laidlaw*, it will in no event be moot unless the City makes it absolutely clear that there is no reasonable likelihood of recurring violations. Here, where the City has not yet executed its settlement with EPD—much less proven that the settlement would, once executed, ensure the City's future compliance—the likelihood of recurrence remains a "disputed factual matter." *Laidlaw*, 528 U.S. at 194. Procedurally, the factual question of the City's future compliance should not be resolved against Riverkeeper without a more complete picture of the City's current compliance—and, because the mootness issue here overlaps with the merits, without the protections of Rules 12(b)(6) and 56. The City's request to dismiss or stay Count I as imminently moot is denied.

### 2. Diligent Prosecution

The City argues, in the alternative, that Count I should be dismissed under the Clean Water Act's diligent prosecution bar,[39] which applies when "a State has commenced and is diligently prosecuting an action under a State law comparable to this subsection."[40] 33 U.S.C. § 1319(g)(6)(A)(ii). As the Eleventh Circuit made clear in *McAbee v. Fort Payne*, however, the diligent prosecution bar does not

---

[39] ECF 24, at 12.

[40] The diligent prosecution bar applies only to actions for civil penalties and thus, even if it were applicable, would not affect Riverkeeper's claim for injunctive relief. 33 U.S.C. § 1319(g)(6)(A).

automatically apply whenever a State and a citizen-plaintiff bring concurrent lawsuits over the same violations. 318 F.3d 1248, 1256 (11th Cir. 2003). Rather, it applies only when the State law's penalty-assessment, public-participation, and judicial-review provisions are each "roughly comparable" with corresponding provisions in the Clean Water Act. 318 F.3d 1248, 1256 (11th Cir. 2003).

Following *McAbee*, district courts in Georgia have been asked four times to hold that EPD's administrative enforcement of the Georgia Water Quality Control Act (GWQCA) is "roughly comparable" to federal enforcement of the Clean Water Act. Each time, the court has refused. *Leakey v. Corridor Materials, LLC*, 839 F. Supp. 2d 1340, 1347–48 (M.D. Ga. 2012); *Ainsworth v. Cmty. Bible Church*, No. 1:10-cv-01964-SCJ, 2012 WL 13076749, at *3–4 (July 19, 2012); *Kendall v. Thaxton Rd. LLC*, No. 1:09-cv-3520-TWT, 2013 WL 210892, at *3–4 (Jan. 18, 2013); *Parris v. 3M Co.*, 595 F. Supp. 3d 1288, 1316–17 (N.D. Ga. 2022). Each time, the court has reasoned that the more limited public-participation rights granted by the GWQCA preclude the application of the diligent prosecution bar. *Id.*

The City acknowledges that under *Leakey*, *Ainsworth*, *Kendall*, and *Parris*, the diligent prosecution bar is inapplicable here,[41] but makes no attempt to engage with those cases: The City neither distinguishes them on their facts, nor argues for

---

[41] ECF 24, at 12.

an alternative application of *McAbee* to the GWQCA, nor cites to any contrary case law. All the City does is point out that district court opinions are not binding precedent.[42] This is of course correct, but, under these circumstances, beside the point. Suffice it to say that this Court adopts the prevailing rule in this district and holds that the differences in the public-participation provisions of the Clean Water Act and the GWQCA render the diligent prosecution bar inapplicable here. The City's request to dismiss or stay Count I pending resolution of EPD's concurrent enforcement action is denied.

### C.   Count II Survives as Derivative of Count I.

The City argues that Count II fails because the narrative condition that the City "properly maintain and operate" its facilities is "intrinsically linked" to the numerical conditions challenged in Count I.[43] According to the City, the Clean Water Act "does not authorize citizen suits "to enforce permit conditions for operation and maintenance **beyond** what is necessary for compliance with effluent limitations."[44] *But see Nat. Res. Def. Council, Inc. v. E.P.A.*, 673 F.2d 400, 403 (D.C. Cir. 1982) (holding, after a survey of the case law, that effluent limitations under the Act include "more than numerical limitations"). Assuming for purposes

---

[42]   *Id.*

[43]   ECF 15-1, at 24.

[44]   ECF 24, at 14.

of this Order that the City is correct, because Count I survives as to all seven pollutants, Count II for "operation and maintenance" survives with it.

### III. CONCLUSION

The City's motion to dismiss or to stay [ECF 15] is **DENIED**. On or before **February 25, 2025**, the City is **ORDERED** to file its answer. Within 14 days of the City's answer, the parties are **ORDERED** to confer and submit a Joint Preliminary Report and Discovery Plan providing for expedited discovery concluding no later than **May 27, 2025**. Finally, on or before **February 18, 2025**, Riverkeeper is **ORDERED** to file a notice indicating its wish either to be heard on its motion for preliminary injunction [ECF 14] immediately, or to withdraw its motion with leave to renew its request for injunctive relief at the close of the expedited discovery period.

**SO ORDERED** this 11th day of February, 2025.

Steven D. Grimberg
United States District Judge